# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# BRUNSWICK DIVISION

DARRYL SOLOMON HOPE,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION NO.: 2:17-cv-69

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Darryl Hope ("Hope"), who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), filed a Petition for Writ of *Audita Querela* pursuant to 28 U.S.C. § 1651, as supplemented. (Docs. 1, 4, 5.) Hope also filed a Motion for Issuance of Writ, (doc. 4), and a Motion for Summary Judgment (doc. 5). For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Hope's Petition and **DISMISS as moot** Hope's Motion for Issuance of Writ and Motion for Summary Judgment. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Hope *in forma pauperis* status on appeal.

## BACKGROUND

On June 10, 1991, a jury in the Southern District of Florida found Hope guilty of conspiring to distribute cocaine and using a firearm during a drug trafficking crime. Docket Sheet, United States v. Hope, 0:90-cr-06108 (S.D. Fla. June 10, 1991), ECF No. 225, p. 6. Hope was sentenced to life plus five (5) years of imprisonment and ordered to pay an assessment of

$100.00. (Doc. 1, p. 8); see also Docket Sheet, United States v. Hope, 0:90-cr-06108 (S.D. Fla. Aug. 30, 1991), ECF No. 225, p. 7.

Following his sentence, Hope has apparently filled much of his days in prison drafting legal pleadings. A search of the United States Court's database reveals that he has filed approximately forty-three (43) new legal actions or appeals over the last twenty-six (26) years. The Southern District of Florida has stated that it is "well aware of movant's abusive and litigious nature. From the time the underlying criminal conviction became final, movant has instituted numerous motions and/or petitions attacking the constitutionality of his conviction . . . ." Order, Hope v. United States, 0:12-cv-61686 (S.D. Fla. Apr. 11, 2013), ECF No. 29, p. 2.

Apparently having exhausted his creativity for coming up with ways to attack the sentence he actually received, Hope now brings the instant Petition to seek relief from a monetary judgment that it appears he did not receive. In his Petition, Hope contends that the Southern District of Florida entered judgment against him for costs pursuant to 28 U.S.C. § 1918. Hope maintains these costs include:

> Marshal fees which the court may tax as costs for serving a writ of attachment and execution, the keeping of the attached person, actual expenses incurred, such as storage, watchmen's or keepers' fees, insurance, and an hourly rate, including overtime, guarding, moving, etc., pursuant to 28 U.S.C. § 1921, and costs to the Government for any imprisonment, probation, supervised release or community confinement, which the Administrative Office of the U.S. Courts dated May 11, 1989, suggests that a monthly cost of $1,210.05 be used for imprisonment, a monthly cost of $91.66 be used for supervision and a monthly cost of $938.44 be used for community confinement totaling $725,808.60 in Petitioner's Criminal Case to date.

(Doc. 1, p. 1.) However, the only documentation Hope provides for this assertion is a page from his Presentence Investigation Report. (Id. at p. 10.) On that page, it appears that the United States Probation Office advised the sentencing judge to impose a monetary amount to cover the costs of imprisonment, probation, supervised release, or community confinement "subject to the

2

defendant's ability to pay." (Id.) The Unites States Probation Office then concluded Hope had no financial assets and that he had no ability to pay a fine. Additionally, Hope's sentencing documents do not indicate that the Southern District of Florida imposed any fine or monetary penalty on Defendant other than the $100.00 mandatory assessment. (Doc. 1, p. 8); see also Docket Sheet, United States v. Hope, 0:90-cr-06108 (S.D. Fla. Aug. 30, 1991), ECF No. 225, p. 7.

## DISCUSSION

In his Petition, Hope avers that he has a dispute with the Government regarding the amount he owes for "attachment, costs, and executions." (Doc. 1, p. 3.) He states that he has tendered a $5.00 money order to the Government with the condition that the Government could only accept the money order as full satisfaction of its claim against him. (Id. at p. 12.) He also attaches a receipt, which he contends is from the Southern District of Florida and shows that the court accepted his money order as full satisfaction of his criminal monetary penalties. (Id. at p. 13.) Thus, Hope maintains that he is entitled to relief under the theories of accord and satisfaction, discharge and release, and breach of contract. (Id. at pp. 3–5.)

### I. Whether Hope can Proceed Pursuant to a Writ of *Audita Querela*

Pretermitting the question of whether Hope even owes any fines or any other criminal monetary penalties, he cannot seek relief from those penalties in this Court through a writ of *audita querla.* The writ of *audita querela*, "Latin for 'the complaint having been heard,' was an ancient writ used to attack the enforcement of a judgment after it was rendered." United States v. Holt, 417 F.3d 1172, 1174 (11th Cir. 2005). The writ was typically employed by a debtor in a civil case to stop a judgment's execution "because of some defense or discharge arising subsequent to the rendition of the judgment." Id. "*Audita querela* is distinguished from *coram*

*nobis* in that *coram nobis* attacks the judgment itself, whereas *audita querela* is directed against the enforcement, or further enforcement, of a judgment which, when rendered, was just and unimpeachable." United States v. Miller, 599 F.3d 484, 487 (5th Cir. 2010). "A writ of *audita querela* is now available only to attack a criminal judgment." Orlansky v. United States, 627 F. App'x 915 (11th Cir. 2015) (citing Fed. R. Civ. P. 60(e)).

However, the Eleventh Circuit Court of Appeals has held that *audita querela* cannot be used to reduce a restitution judgment when statutory avenues exist to achieve that reduction. Id. at 915–16. In Orlansky, the Court explained, though federal courts retain the authority to issue all writs, that residual authority does not apply if a statute addresses the issue at hand. Id. at 915 (citing Pa. Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985)). The Court further explained that 18 U.S.C. § 3664 provided the petitioner an avenue to obtain the relief he sought through *audita querela*. Id. at 916. Accordingly, the Eleventh Circuit affirmed the district court's dismissal of the petition. Id. Moreover, the Eleventh Circuit has indicated that a federal prisoner is not entitled to a writ of *audita querela* when relief is cognizable under 28 U.S.C. § 2255. Holt, 417 F.3d at 1173; see also Harris v. United States, No. 4:16CV132-RH/CAS, 2016 WL 3039654, at *12 (N.D. Fla. Apr. 8, 2016), *report and recommendation adopted*, 2016 WL 3039881 (N.D. Fla. May 29, 2016). Likewise, in this case, it appears that Hope's avenue for relief, if any, rests with the sentencing court.

For instance, to the extent that Hope seeks to amend or correct a restitution portion of his sentence, through 18 U.S.C. § 3664(o), Congress has provided mechanisms by which the sentencing court can correct, amend, and modify an order of restitution. To the extent that Hope argues any monetary penalty has become infirm due to circumstances after the entry of the order, some Circuits have recognized, "with some reservation, that the writ of *audita querela* might

4

also survive in criminal adjudications, if there is a gap for it to fill" in the federal post-conviction remedial scheme. United States v. Miller, 599 F.3d 484, 487 (5th Cir. 2010) (citing United States v. Banda, 1 F.3d 354, 356 (5th Cir. 1993)); United States v. Reyes, 945 F.2d 862, 865 & n.5 (5th Cir. 1991); United States v. Holder, 936 F.2d 1 (1st Cir. 1991); United States v. Ayala, 894 F.2d 425, 429 (D.C. Cir. 1990); United States v. Kimberlin, 675 F.2d 866 (7th Cir. 1982). However, it is not clear if that authority would provide Hope with the ability to bring an independent cause of action in this Court, as opposed to petitioning the sentencing court. Ordinarily, a sentencing court retains jurisdiction over its restitution order. United States v. Joseph, 914 F.2d 780 (6th Cir. 1990); United States v. Smith, No. CR01-0057, 2010 WL 55484, at *3 (N.D. Iowa Jan. 6, 2010); United States v. Watson-El, No. 04-00181-01-CR-W-NKL, 2009 WL 1765007, at *2 (W.D. Mo. June 22, 2009); United States v. Holland, 380 F. Supp. 2d 1264, 1269 (N.D. Ala. 2005). As the Seventh Circuit Court of Appeals explained, "the district court must make clear in its [restitution] order that it is retaining supervision and control over the defendants, including the payment of restitution, and that any problems encountered in the enforcement of the [restitution] order, by either the probation department or the defendants, must be brought to the sentencing judge's attention for resolution by him." United States v. Boula, 997 F.2d 263, 269 (7th Cir. 1993).

Even if this Court could entertain Hope's Petition, his substantive arguments in support of the writ entirely lack legal support. As an initial matter, Hope has not even demonstrated he has a fine or other monetary judgment that he needs to satisfy. The only record he provides to support his contention that he received a fine is from his Presentence Investigation Report. (Doc. 1, p. 10.) However, the Probation Office only set forth those penalties that the sentencing court could have imposed if Hope had the ability to pay. (Id.) The Probation Office also noted

that Hope did not have the ability to pay a fine. (Id.) Moreover, the records from Hope's criminal case indicate that he was only assessed the $100.00 mandatory assessment. (Doc. 1, p. 8); see also Docket Sheet, United States v. Hope, 0:90-cr-06108 (S.D. Fla. Aug. 30, 1991), ECF No. 225, p. 7.

Further, there is absolutely no basis for Hope's argument that, by delivering a $5.00 money order to the Court, he somehow satisfied whatever monetary penalties or fines he may owe. Unsurprisingly, courts have categorically rejected similar attempts at "payment" made by other defendants. See, e.g., In re Smith v. Behavioral Sys. Sw., No. ED CV151226RT (PLA), 2015 WL 4607855, at *3 (C.D. Cal. July 30, 2015) ("[P]etitioner here has provided the Court with no evidentiary (or on-point legal) support for his claim that the alleged 'bond' or 'promissory note' that he discusses in his Exhibits to the Petition satisfies his outstanding restitution obligation. Indeed, none of the documents attached to the Petition demonstrates that petitioner has provided any acceptable payment to the Court that would discharge his restitution obligation in whole or in part."); Harris v. Rios, No. 1:11-CV-01722-BAM-HC, 2012 WL 913757, at *4 (E.D. Cal. Mar. 16, 2012) ("Petitioner cites no authority, however, and the Court is aware of none, that requires either a custodial authority or a sentencing court to permit a prisoner to satisfy a criminal judgment for a fine by a prisoner's service of the sentence, a promissory note, or unspecified personal property."). Hope's strained and unsupported attempt to import principles of contract law into issues of criminal penalties has no support in the law or logic.

For all of these reasons, the Court should **DISMISS** Hope's Petition for a Writ of *Audita Querela*.

## II. Whether Hope can Proceed Pursuant to the All Writs Act

Hope asserts he is bringing his Petition for *Audita Querela* pursuant to 28 U.S.C. § 1651, the All Writs Act. That Act permits courts to "issue all writs necessary or appropriate in aid of their . . . jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Unlike a traditional collateral proceeding, an injunction under the All Writs Act is not predicated on a cause of action.[1] Klay v. United HealthGroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004). Rather, the movant "must simply point to some ongoing proceeding, or some past order or judgment [of the court], the integrity of which is being threatened by someone else's action or behavior." Id. However, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." Pa. Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985).

---

[1] The All Writs Act permits for the issuance of injunctive relief. Only three types of injunctions may be issued by federal courts. Klay, 376 F.3d at 1097. They are: (1) statutory injunctions; (2) "traditional" injunctions; and (3) injunctions issued under the All Writs Act, 28 U.S.C. § 1651(a). Id. at 1097–99.

A statutory injunction is available only "where a statute bans certain conduct or establishes certain rights, then specifies that a court may grant an injunction to enforce the statute." Id. at 1098. "[T]he standards for granting statutorily-authorized injunctions are necessarily controlled by the statute itself." Id. Hope does not cite any federal statutory scheme which supports a request for an injunction.

A "traditional" injunction is the type of injunction with which courts are perhaps most acquainted. A traditional injunction permits a temporary (or permanent) injunction where: (1) the movant has a substantial likelihood of (or actual) success on the merits of the underlying claim; (2) irreparable injury will result absent the injunction; (3) the threatened injury outweighs whatever damage the injunction may cause; and (4) the injunction would not have an adverse impact on the public interest. Id. at 1097. As the first factor makes clear, any motion or suit for a traditional injunction must be predicated upon a cause of action, such as nuisance, trespass, the First Amendment, etc., regarding which a plaintiff must show a likelihood or actuality of success on the merits.

There is no such thing as a suit for a traditional injunction in the abstract. Id. To the extent Hope seeks injunctive relief through this cause of action, he does not predicate any of his putative requests for injunctive relief on any independent cause of action. Rather, his putative request for an injunction is the quintessential request for an injunction in the abstract.

7

Consequently, Hope cannot use the All Writs Act to collaterally attack a conviction or sentence where post-conviction relief is available through 28 U.S.C. § 2255. See Morales v. Fla. Dep't of Corr., 346 F. App'x 539, 541 (11th Cir. 2009). The fact that Hope may not ultimately be able to obtain relief under Section 2255 because of procedural default, the statute of limitations, or some other similar bar does not provide grounds for the Court to invoke the All Writs Act. Id. (affirming district court's dismissal of petitioner's collateral attack on his conviction, brought pursuant to the All Writs Act, as a successive habeas petition "[b]ecause [petitioner] could not circumvent the statutory requirements for filing a successive § 2254 petition by invoking the All Writs Act[.]"); see also Holt, 417 F.3d at 1175 (common law writ of *audita querela* may not be granted when relief is cognizable under 28 U.S.C. § 2255).

Here, Hope essentially asks this Court to invalidate a fine or penalty portion of his sentence (if such a penalty exists), and this Court lacks jurisdiction over such a request. Such a request should be brought in the district of Hope's conviction. Accordingly, the Court should **DISMISS** Hope's cause of action for this reason, as well.

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Hope leave to appeal *in forma pauperis*. Though Hope has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous

claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Hope's Petition, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court I **RECOMMEND** that the Court **DISMISS** Hope's Petition and **DISMISS as moot** Hope's Motion for Issuance of Writ and Motion for Summary Judgment. I also **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Hope *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Hope.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of October, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA